UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

JENMARIE L. BYRNES AND DONNA
FLORKIEWICZ,

                 Plaintiffs,

                against

NEW YORK STATE NURSES ASSOCIATION,
AND PATRICIA DILILLO, JUDY SHERIDAN-
GONZALEZ, PATRICIA KANE, ANNE BOVE,
ANTHONY CIAMPA, SHIRLEY HUNTER,
GRACE OTTO, VERONICA RICHARDSON AND
VIRGINIA STEWART,

                 Defendants.

-------------------------------------------------------------- x

Civil Action No. 11-CV-8809 (RJS)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING ORDER**

Bruce S. Levine
Peter D. DeChiara
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, NY 10036-6976
212-563-4100

Attorneys for Defendants

00204617.1

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 1

    The Instant Lawsuit ............................................................................................................... 1

ARGUMENT:  PLAINTIFFS' APPLICATION FOR  INTERIM INJUNCTIVE RELIEF
SHOULD BE DENIED .............................................................................................................. 10

I.      PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM ............................................ 11

    A.    The Rerun Election ................................................................................. 11

    B.    NYSNA's Decision Not To Pay Dues To NFN ..................................... 12

    C.    The Alleged Violation of ANA Bylaws .................................................. 13

    D.    The Termination of NYSNA Staff .......................................................... 14

    E.    Alleged "Prejudicial Campaigning" ....................................................... 16

    F.    The Alleged Limitation of the President's Authority ............................ 16

II.      PLAINTIFFS FAIL TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS .. 17

    A.    The Rerun Election ................................................................................. 18

    B.    Failure to Pay Dues to NFN .................................................................... 18

    C.    The Alleged Violation of ANA Bylaws .................................................. 20

    D.    The Termination of NYSNA Staff .......................................................... 20

    E.    Alleged "Prejudicial Campaigning" ....................................................... 21

    F.    The Alleged Limitation of the President's Authority ............................ 21

III.     PLAINTIFFS FAIL TO SHOW A BALANCE OF HARDSHIPS TIPPING
       DECIDEDLY IN THEIR FAVOR ............................................................................. 22

CONCLUSION .......................................................................................................................... 23

# TABLE OF AUTHORITIES

Page

CASES

*Aircraft Mechanics Fraternal Ass'n v. Transport Workers Union, Local 514*,
    98 F.3d 597 (10th Cir. 1996) .................................................................20

*Ball v. Bonano*,
    No. 99-CV-32699, 1999 WL 1337173 (S.D.N.Y., Oct. 25, 1999).........................................12

*Communications Workers of Am. v. CWA Local 3010*,
    594 F.Supp.2d 187 (D.P.R. 2009).........................................19

*Converso v. United Am. Nurses*,
    2009 WL 4547578 (N.D. Ill. 2009) .................................10

*Craig v. Boudrot*,
    40 F.Supp.2d 494 (S.D.N.Y. 1999).........................................18

*Dilacio v. New York City Dist. Council of United Bhd. of Carpenters & Joiners of Am.*,
    2008 WL 4449361 (S.D.N.Y. 2008).........................................10, 17

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009).......................................... *passim*

*Finnegan v. Leu*,
    456 U.S. 431 (1982).........................................15, 21, 22

*Kane v. NYSNA*,
    11-CV-6505 (RJS) ("First Action").......................................... *passim*

*Local 1199 v. RWDSU*,
    671 F. Supp. 279 (S.D.N.Y. 1987).........................................20

*Schalk v. Transport Workers Union*,
    2007 WL 1310171 (S.D.N.Y. 2007).........................................20

*Shea v. McCarthy*,
    953 F.2d 29 (2d Cir. 1992).........................................19

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008).........................................10, 11, 15

**STATUTES**

                                                                        Page

29 U.S.C. §§101-15 ...............................................................................10

29 U.S.C. §107 .....................................................................................11

29 U.S.C. §113(a) .................................................................................10

29 U.S.C. §152(5) .................................................................................19

29 U.S.C. §185 ............................................................................. *passim*

29 U.S.C. §482 .......................................................................................3

29 U.S.C. §483 ..................................................................................3, 11

Defendants New York State Nurses Association ("NYSNA"), Patricia Dilillo, Judy Sheridan-Gonzalez, Patricia Kane, Anne Bove, Anthony Ciampa, Shirley Hunter, Grace Otto, Veronica Richardson and Verginia Stewart[1] (together, "Individual Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' application for a preliminary injunction and temporary restraining order.

## PRELIMINARY STATEMENT

In this politically motivated action by two self-described "rank-and-file" members of NYSNA against NYSNA and several of its newly elected officers and Board members, the Plaintiffs request the extraordinary remedy of interim injunctive relief concerning a grab-bag of complaints they have about alleged conduct by NYSNA's new administration. The application should be denied because plaintiffs come nowhere close to showing that they face irreparable harm absent a preliminary injunction. Plaintiffs also fall far short of showing a likelihood of success on the merits of their claims.

## STATEMENT OF FACTS

### The Instant Lawsuit

The Individual Defendants are current officers or Board members of NYSNA. Declaration of Patricia Kane ("Kane Dec.") at ¶ 1. Plaintiffs are two "rank and file members" of NYSNA. *See* Dec. 2, 2011 Declaration of Arthur Z. Schwartz in Support of an Order to Show Cause and Temporary Restraining Order ("Schwartz Dec.") at ¶ 1.

The complaint filed by plaintiffs contains four counts. Count 1 asserts a claim under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §185, that Defendants violated NFN's Constitution through their "decision not to allow NYSNA to pay

---

[1] Defendant Verginia Stewart's name is misspelled in the caption.

NFN dues."  Complaint ¶ 68.  Count 2, also asserted under LMRA Section 301, claims that the Defendants violated ANA's bylaws by their decision to have NYSNA "hire the head of the Massachusetts Chapter of NNU."  Complaint ¶ 73.  Count 3 asserts a state law breach-of-contract claim that Defendants violated NYSNA's bylaws and policies by deciding to hold the rerun election in abeyance, by terminating and replacing certain NYSNA staff, and by allegedly utilizing "the union's communications mechanisms to promote the election of the individual defendants."  Complaint ¶¶ 79, 80.  Count 4 asserts a state law breach-of-contract claim that Defendants violated NYSNA's bylaws and policies by allegedly limiting the authority and functions of NYSNA's president.  *See* Complaint ¶ 85.

As a remedy, Plaintiffs seek an injunction requiring NYSNA to pay dues to NFN and to hold a rerun election, and prohibiting Defendants from "taking actions to undermine NYSNA's affiliation with ANA"; limiting the power of NYSNA's president; issuing flyers or public statements in NYSNA's name lauding the election victory of the slate consisting of and supported by the individual Defendants; and terminating NYSNA staff, except for cause.  *See* Complaint, ¶ 1 of "Prayer For Relief."  On the same day they filed the action, Plaintiffs filed an application for an order to show cause why a preliminary injunction should not issue providing them the injunctive relief they seek.

The complaint is related to a pending action in *Kane v. NYSNA*, 11-CV-6505 (RJS) ("First Action"), in which the Court granted the plaintiffs request for a preliminary injunction requiring NYSNA's incumbent Board of Directors (the "prior Board") to declare the winners of the recent NYSNA election and to seat the winning candidates.  Kane Dec., Ex. A. The winning candidates were members of a slate that was overwhelmingly elected by the membership, and which was opposed by a slate of candidates consisting of and supported by

incumbent members of the prior Board.  *Id.* ¶ 2.  It was only after the Court found that the defendants in the First Action were in contempt of the preliminary injunction that the defendants in the First Action, two weeks after the issuance of the preliminary injunction, came into compliance and sat the winning reform slate of candidates.  *Id.* ¶ 6, Ex. D.

The defendants in the first action have appealed the preliminary injunction as well as this Court's denial of the application to stay the preliminary injunction—that they have already complied with—pending the outcome of their appeal.  Their supporters have also filed a challenge to the election results with the United States Department of Labor ("DOL"), which, pursuant to Title IV of the LMRDA, has exclusive authority over such post-election challenges to the validity of an election.[2]  In the interim, the candidates who were overwhelmingly elected to the Board of Directors and their incumbent supporters on the Board now constitute a majority.

The seating of the winning candidates is of course fully consistent with Title IV, which states:

> The challenged election shall be presumed valid pending a final decision thereon … and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

29 U.S.C. §482.  This Court, in its decision in the First Action, held that NYSNA's Bylaws, consistent with Title IV, required that the winning candidates be declared and seated on the Board.  Kane Dec., Ex. A.

      1.    <u>The Rerun Election</u>

Plaintiffs seek a preliminary injunction to require NYSNA to undertake a rerun election, which the defendants in *Kane* voted to conduct nearly two weeks after they had been

---

[2] 29 U.S.C. §483 ("The remedy provided by this subchapter for challenging an election shall be exclusive.").

ordered to seat the winning slate of candidates.  Specifically, on October 25, 2011, the prior

Board voted to accept the recommendation of the NYSNA Election Committee to conduct a

rerun election.  Kane Dec. ¶ 4, Ex. B.  The Election Committee, consisting of individuals

appointed by and/or supporters of the prior Board, issued a recommendation to rerun the election

on October 14, 2011, one day after this Court issued its preliminary injunction, nearly two

months after the results of the election were announced on August 24, 2011 and with virtually no

investigation of the charges made against the winning candidates or consideration of the position

statements they received from the winning candidates in defense of the charges.  Indeed, the

Election Committee, which based its recommendation on alleged claims of "dual unionism" on

the winning candidates, failed to interview a single member or supporter of the slate of winning

candidates.  Neither did it respond to any of the legal arguments presented by the winning slate

of candidates in response to the allegation of dual unionism.  *Id.* ¶ 10, Ex. G.

On October 25, 2011, nearly two weeks after the issuance of the preliminary

The rerun recommendation of the Election Committee was appealed by the

winning candidates, and the appeal was denied by the Election Appeals Committee.  Kane Dec.

¶ 10, Exs. H and I.  Like the Elections committee, the Appeals Committee conducted no

investigation, failed to consider any of the arguments of the winning candidates, and failed to

explain its decision.  *Id.*

On October 25, 2011, nearly two weeks after the issuance of the preliminary

injunction in the First Action, the prior Board voted to accept the recommendation of the

Election Committee to conduct a rerun election and, notwithstanding the preliminary injunction,

also voted to remain in office pending the outcome of that election.  Kane Dec. ¶¶ 4, 11, Ex. B.

After the defendants in the First Action finally came into compliance with the

preliminary injunction on October 28, 2011, the newly-elected Board of Directors voted to hold

any decision to rerun the election in abeyance pending an investigation of the underlying election protests.  Kane Dec. ¶¶ 8, 11.

Supporters of the prior Board have filed a complaint with the DOL concerning the outcome of the election.  The newly elected Board is fully cooperating with the DOL in that investigation.  Members of the slate of winning candidates have or will be interviewed by DOL investigators, and the newly elected Board has committed to continue to work in good faith throughout the DOL's investigation.  Kane Dec. ¶ 12.

Plaintiffs seek to enjoin NYSNA's decision from delaying the conducting of a rerun election.  Plaintiffs have not alleged that they have no adequate remedy at law, and could not do so in light of the pending investigation by the DOL which as stated has exclusive jurisdiction over such post-election challenges.

Plaintiffs contend that the Board of Directors is bound by NYSNA's bylaws to comply with the recommendation of NYSNA's Election Committee to conduct the rerun election.  Of course, even the prior Board treated the Election Committee's report as a non-binding recommendation, as it conducted a vote to accept that report and proceed to a rerun. Kane Dec. ¶ 11, Ex. B at ¶ 7.  NYSNA's Bylaws provide that the Board of Directors is the ultimate representative authority and "responsible for the corporate management and fiduciary affairs of th[e] association.  Kane Dec., Ex. E, Art. X §§ 1, 3.  The Bylaws expressly provide for two elected committees (nominations and executive), and two standing committees (finance and bylaw), but are silent with respect to both the Elections and Election Appeals Committees.  The Election and Appeals Committees are creations of the prior Board and even plaintiffs acknowledge that these committees can make recommendations and do not override the authority of the Board.  *See, e.g.,* Verified Complaint ¶ 38.  Indeed, plaintiffs cite to a colloquy in the

transcript—albeit incompletely and selectively—from the October 26, 2011 proceedings before this Court, in which the report of the election committee is deemed to be a recommendation.[3]

        2.     The National Federation of Nurses

On November 16, 2011, the newly elected Board voted to request that NYSNA's Delegate Assembly form a task force to examine NYSNA's affiliation with the National Federation of Nurses ("NFN") and report the task force's findings to the Board. The Board also directed that payment of NFN dues be suspended and placed in escrow pending that examination. The Board took this action after it received a report from one of NYSNA's representatives to the NFN's National Advisory Board in which she advised that that NYSNA staff had not been permitted to attend the meeting of that board. Kane Dec. ¶ 14.

---

[3] Plaintiffs provide an excerpt from a colloquy found in the transcript from the proceedings in the First Action held on October 26, 2011, stating:

    THE COURT: It's not clear to me why the declaring of the winner and the new board members coming on prevents the election committee from doing its work. If they think the remedy is no, we are going to have a new election they can do that right, right?

    COUNSEL FOR DEFENDANTS: The declaring of the election and installation of people, again, it's just not obvious who has the authority to do that prior to a positive determination by the election protest procedure that someone was elected.

    THE COURT: Where does it say that that the election protest procedure means that the election will not be declared until the election committee has decided that? It doesn't say that, does it? It seems to me to be perfectly consistent with the election protest procedure that they get protests, they convene, they investigate, *they basically recommend remedies.* (emphasis added.)

    If in the interim, in accordance with the bylaws, the winners of the election are declared and they now sit and form the new board, the election committee still gets to make its *recommendations* (emphasis added) and no one is saying they don't get to proceed. Are you saying something different Ms. Davis [counsel for plaintiffs]?

    MS. DAVIS: No, your Honor, we are saying precisely that. We have no problem with the spirit of the spirit of the LMRDA allowing them to set up a policy that essentially they can do an investigation—they didn't do one here, but theoretically they can do an investigation—and they can make *recommendations* to the board. (emphasis added) That's exactly what happened and the [prior] board met yesterday [on October 25, 2011].

Kane Dec., Ex. C at 56-57.

Plaintiffs seek to enjoin the Board of Directors from suspending the dues payments.  They claim that they will suffer irreparable harm absent a preliminary injunction because NYSNA's failure to pay dues to NFN "imperils" NYSNA's affiliation with NFN.  *See* Plaintiffs' Memorandum of Law in Support of an Application for a Preliminary Injunction and Temporary Restraining Order ("Pltfs. Mem.") at 10.  Plaintiffs also assert that the loss of such affiliation "will be difficult to reverse."  *Id*.

Plaintiffs do not allege that NFN is poised to expel NYSNA, and NYSNA is unaware of any such efforts.  Nor do they state how placing dues money in escrow violates any rule under the NFN Constitution or NYSNA's bylaws.  The NFN constitution nowhere provides that an organization affiliate like NYSNA has an ongoing obligation to pay dues to NFN; it merely provides that the affiliate is required to paid a one-time fee.  *See* Kane Dec., Ex. J, at 4, Art. V, §4(B)(4) (requiring organization affiliate to have "Paid a fee as established by the NEB").

In addition, NYSNA could only be removed as an NFN affiliate only if its non-compliance with the constitution is "to the detriment of the Core Covenants or Functions of NFN"; only after a hearing before NFN's National Executive Board; only if, after the hearing, two-thirds of the weighted vote of the NFN National Executive Board members present and voting vote to discipline NYSNA; only if the discipline voted on is expulsion as opposed to fines or suspension; and only if NYSNA fails to exercise its right to appeal the decision to NFN's National Federation Assembly or appeals and loses.  *See* Kane Dec., Ex. J, Art. XIII, §2(A), §2(B).  Plaintiffs do not allege that NFN has taken any action in response to NYSNA's not paying dues.  Nor do plaintiffs explain how a loss of NYSNA's affiliation with NFN would be "difficult to reverse."  Pltfs. Mem. at 10.

### 3.   The American Nurses Association

Plaintiffs next contend that the Court should preliminarily enjoin NYSNA from taking actions that may jeopardize NYSNA's relationship with the American Nurses Association ("ANA").  NYSNA is an affiliate of the ANA, and plaintiffs themselves have filed a charge with the ANA based on alleged "dual unionism" by the new Board of Directors in violation of the ANA Constitution.  Kane Dec. ¶ 16.  In short, plaintiffs complain of the possible effects of a charge that they themselves filed.  By letter dated November 29, 2011, counsel for defendants wrote to ANA in response to plaintiffs' charge against NYSNA and stated, *inter alia*, that the charge was meritless because there was no evidence (nor of course could there be) that NYSNA was attempting to disaffiliate from itself as the bargaining agent of any employees currently represented by NYSNA.  Kane Dec., Ex. K.

Plaintiffs do not explain how they would be irreparably harmed if the ANA were to sustain the charges that plaintiffs themselves filed against NYSNA.  Plaintiffs speculate that ANA may choose to expel NYSNA and also speculate that such an expulsion would be difficult to reverse.  Nor have they offered any evidence that expulsion has been considered by ANA, other than to assert that a hearing has been scheduled.

### 4.   Presidential Authority

Winifred Kennedy is the president of NYSNA and is also one of the defendants in the First Action.  Kane Dec. ¶ 2.  Plaintiffs claim that the new Board majority has interfered with Kennedy's authority, and they seek to enjoin such alleged interference.  Plaintiffs have not alleged facts that explain how, absent injunctive relief, they would be individually and irreparably harmed by any such alleged interference.

Under NYSNA's bylaws, the president is only one of several members of the Board of Directors and the Executive Committee.  The bylaws state that the president shall:

    (a)    Chair the Board of Directors, the Executive Committee and the Constituent District Nurses Association Assembly.

    (b)    Preside at all meetings of this association;

    (c)    Serve as an ex officio member of all committees except the Nominating Committee;

    (d)    Serve as the official representative of this association.

Kane Dec., Ex. E, at 4, Art. V § 5.

Plaintiffs' allegation that defendants are undermining the president's authority appears to be based solely on a memorandum sent by NYSNA Interim Executive Director Julie Pinkham, stating that "[c]onsistent with the Board of Director's motion and existing NYSNA policy, you are not to take any action(s) on matters involving the Board.  In particular, the correspondence from the ANA dated November 15, 2011 has been referred to and will be handled by legal counsel."  Kane Dec., Ex. L; *see also* Declaration of Julie Pinkham dated December 8, 2011 ("Pinkham Dec.") ¶ 4, and exhibit annexed thereto.  Plaintiffs do not explain how this memorandum undermines Kennedy's authority and, notably, how they will be irreparably harmed without an injunction.  The  memorandum appears to be consistent with a long-standing written policy of the Board, providing that "[t]he exercise of the management function of the board is vested only when convened as a Board, rather than as individual members."  Kane Dec., Ex. M.

    5.    <u>Use of NYSNA Funds for Improper Political Purposes</u>

Plaintiffs reference a newspaper article that refers to a flyer, which they allege was prepared with NYSNA funds and which speaks favorably of the newly-elected Board of Directors.  This hearsay account is unaccompanied by a copy of any such flier and without any

evidence that such a flyer was prepared with NYSNA funds.  Both Kane and Pinkham deny

NYSNA's knowledge of any such flyer, or the use of NYSNA funds to prepare any such flyer.

Kane Dec. ¶ 18; Pinkham Dec. ¶ 3.

> 6.     Termination of Staff

Finally, plaintiffs seek to enjoin the termination of various staff employed by

NYSNA. Plaintiffs do not and cannot allege that NYSNA lacks authority to employ staff

members of their choosing.  Neither do they explain how they will suffer individual and

irreparable harm by such terminations.

## ARGUMENT:  PLAINTIFFS' APPLICATION FOR
## INTERIM INJUNCTIVE RELIEF SHOULD BE DENIED

An award of interim injunctive relief is an "extraordinary remedy" only available

upon a clear showing that plaintiff is entitled to such relief.  *See Winter v. Natural Resources*

*Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, plaintiff must

show both (1) irreparable harm absent the preliminary injunction and (2) either (a) a likelihood

of success on the merits or (b) sufficiently serious questions going to the merits to make them

fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor.

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009); *Dilacio v.*

*New York City Dist. Council of United Bhd. of Carpenters & Joiners of Am.*, 2008 WL 4449361,

at *4 (S.D.N.Y. 2008).  Plaintiffs here fall far short of meeting any part of this test.[4]

---

[4] In addition to the generally applicable standards for interim injunction relief, Plaintiffs must
also satisfy the standards for injunctive relief set forth in the Norris-LaGuardia Act ("NLGA"),
29 U.S.C. §§101-15, since it involves or grows out of a labor dispute between employees and an
association of employees, *see* 29 U.S.C. §113(a), and is a controversy in part over who will serve
as the representatives of the union, *see id.* §113(c) ("labor dispute includes controversy over
"representation of persons"); *see generally Converso v. United Am. Nurses*, 2009 WL 4547578,
at *4 (N.D. Ill. 2009) (stating that suit by two nurses against their union "appears to involve a
labor dispute" within meaning of NLGA but finding it unnecessary to reach that issue).

## I.      PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM

Showing irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'"  *Faiveley*, 559 F.3d at 118 (citation omitted).  To meet this requirement, a plaintiff must show that irreparable harm is likely, not just possible.  *See Winter*, 555 U.S. at 22.  A plaintiff must also demonstrate that absent the interim injunctive relief, he or she will suffer an injury that is "'neither remote nor speculative'" but "'actual and imminent.'"  *Faiveley*, 559 F.3d at 118 (citation omitted).  Where a plaintiff has an adequate remedy at law, such as money damages, injunctions are unavailable except in extraordinary circumstances.  *Faiveley*, 559 F.3d at 118.  Plaintiffs fail to demonstrate that they will be irreparably harmed in this cause without injunctive relief.

### A.      The Rerun Election

Plaintiffs have not and cannot show any basis upon which they are irreparably harmed, individually and otherwise, by NYSNA's decision to hold in abeyance the recommendation by the Election Committee to conduct a rerun election.  At the threshold, the DOL is currently investigating complaints about the results of the election and, as stated, the DOL's authority over such post-election challenges is exclusive.  29 U.S.C. § 483.  In addition, Title IV of the LMRDA states that, during the pendency of such investigations by the DOL, challenged elections are presumed to be valid and the winning candidates, absent any union bylaw provision to the contrary, are charged with running the affairs of the union.  As stated, this Court held in the First Action, and consistent with Title IV, that the winning candidates must be seated.  Kane Dec., Ex. A at 5-7.

---

Among other things, the NLGA requires a plaintiff seeking a TRO to file an undertaking with adequate security in an amount to be fixed by the court; renders any TRO void after five days; and requires testimony in open court before a preliminary injunction can issue.  *See* 29 U.S.C. §107.

Plaintiffs contend that the holding any decision on the rerun election in abeyance impacts on their right to vote.[5]  But that is not correct; the election has already occurred and they have voted, and the DOL, which has exclusive jurisdiction over post-election challenges, is presently conducting an investigation into the validity of the election results.  Plaintiffs also contend, citing DOL regulations, that they will somehow be irreparably harmed if the rerun is not held immediately because it will circumvent their right to use internal election review procedures.  But even if plaintiffs did have some kind of right, statutory or otherwise, to exercise "internal election review procedures," plaintiffs are not foreclosed from seeking relief from the Department of Labor for any alleged denial of such a right.  Indeed, the pendency of the DOL's investigation should foreclose any genuine claim of irreparable harm.

B.      NYSNA's Decision Not to Pay Dues to NFN

Plaintiffs claim that they will suffer irreparable harm absent a preliminary injunction because NYSNA's failure to pay dues to NFN "imperils" NYSNA's affiliation with NFN.  *See* Pltfs. Mem. at 10.  Moreover, Plaintiffs assert, the loss of such affiliation "will be difficult to reverse."  *Id*.  This argument fails because Plaintiffs do not show any "actual and imminent" risk, *see Faiveley*, 559 F.3d at 118, that NYSNA is going to lose its affiliation with NFN.

First, the NFN constitution on its face nowhere provides that an affiliate like NYSNA has an ongoing obligation to pay dues to NFN; it merely requires an affiliate to pay a one-time fee.  But even assuming NYSNA has an ongoing obligation under the NFN constitution to pay dues to NFN, the constitution provides that an affiliate can be removed only (1) if its non-

_____

[5] Plaintiffs cite to this Court's decision in *Ball v. Bonano*, No. 99-CV-32699, 1999 WL 1337173, at *1 (S.D.N.Y., Oct. 25, 1999) for the undisputed proposition that union members suffer irreparable harm if they are not allowed to vote.  Plaintiffs have been permitted to vote.

compliance with the constitution is interpreted to be "to the detriment of the Core Covenants or Functions of NFN"; (2) after a hearing; (3) if, after the hearing, two-thirds of the weighted vote of the NFN National Executive Board members present and voting vote to discipline NYSNA; (4) if the discipline voted on is expulsion as opposed to fines or suspension; and (5) if NYSNA fails to exercise its right to appeal the decision to NFN's National Federation Assembly, or appeals and loses.  Kane Dec., Ex. G, Art. XIII, §2(A), §2(B).  Plaintiffs provide no evidence that NFN has taken any action in response to NYSNA's not paying dues and, even if NFN had taken action, all of the above contingencies would have to be met before NYSNA is expelled. Accordingly, it is impossible to conclude that the risk of NYSNA losing its NFN affiliation is "actual and imminent."  *Faiveley*, 559 F.3d at 118.

Next, Plaintiffs fail to provide any factual support for their claim that a loss of NYSNA's affiliation with NFN, if it ever did occur, would be "difficult to reverse."  Pltfs. Mem. at 10.  Presumably, if NYSNA were to lose its affiliation for failure to pay dues, the situation could be remedied, and its affiliation restored, once it became current on its dues.  Plaintiffs' assertion that the affiliation would be "difficult to reverse" is pure speculation.

In addition, even if NYSNA did face an actual and imminent risk of losing its affiliation with NFN, and even if such a loss would be difficult to reverse, Plaintiffs provide no evidence showing that they would be irreparably harmed by such a loss.  Plaintiffs provide no evidence regarding how affiliation with NFN benefits NYSNA members generally or the two of them in particular.  They thus fail to show that they would be harmed, let alone irreparably harmed, were NYSNA to lose the affiliation.

C.    The Alleged Violation of ANA Bylaws

Plaintiffs next claim that they will suffer irreparable harm absent a preliminary injunction because, they say, Defendants' conduct also "imperils" NYSNA's affiliation with

ANA.  *See* Pltfs. Mem. at 9-10.  Moreover, Plaintiffs assert, the loss of such affiliation "will be difficult to reverse."  *Id*.  Of course, plaintiffs fail to point out that they are exclusively or among those who have have filed a complaint against NYSNA with ANA, so that, even if NYSNA did face disaffiliation from ANA, plaintiffs are directly responsible for initiating the disaffiliation they express concern about.

       In any event, this argument, like the argument concerning NFN, fails because Plaintiffs cannot show an "actual and imminent" risk, *see Faiveley*, 559 F.3d at 118, that NYSNA is going to lose its affiliation.[6]  Moreover, Plaintiffs fail to provide any factual support for their claim that a loss of NYSNA's affiliation with NFN would be "difficult to reverse."  Pltfs. Mem. at 10.  Presumably, if NYSNA were to lose its affiliation for engaging in conduct that ANA's hearing panel deemed to be dual unionism, the situation could be remedied, and its affiliation restored, at such a time in the future that NYSNA ceases to engage in such conduct.  On this record, Plaintiffs' assertion that the affiliation would be "difficult to reverse" is pure speculation.

       In addition, even if NYSNA did face an actual and imminent risk of losing its affiliation with ANA, and even if such a loss would be difficult to reverse, Plaintiffs provide no evidence showing that they would be irreparably harmed by such a loss.  In particular, Plaintiffs provide no evidence regarding how loss of affiliation with ANA would injure NYSNA members generally, or them in particular.

      D.    The Termination of NYSNA Staff

       Plaintiffs also fail to show that NYSNA's termination of certain of its staff, *see* Complaint ¶ 59, causes them irreparable harm.  Plaintiffs allege that the terminations will cause

---

[6] Plaintiffs note that the ANA had scheduled a hearing on December 5, 2011, but have not at this time provided any information regarding what took place at that hearing.

NYSNA to incur a large expense in severance pay owed to the discharged staff. *See id.* ¶60. But this would be an expense borne by NYSNA, not by the Plaintiffs. Even if one speculated that the cost borne by NYSNA would eventually be passed on in some form to its members, such speculation could not support a finding of irreparable harm, since the harm would be purely financial, and could be compensated with damages.

Plaintiffs also assert that the terminations create staff vacancies that the new Board majority can fill with political supporters. Complaint ¶61. But there is nothing wrong with a newly elected administration filling staff positions with supporters; the Supreme Court has explained that federal labor law "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." *Finnegan v. Leu*, 456 U.S. 431, 441 (1982). Indeed, far from harming a union's rank-and-file members, a new administration's selecting its own staff "is an integral part of ensuring a union administrator's responsiveness to the mandate of the union election." *Id.*

Finally, Plaintiffs argue that the newly hired staff "can help promote defendants during the rerun process." Pltfs. Mem. at 11. But what role, if any, newly hired staff may play in any future rerun election is unknown. NYSNA would certainly not condone paid union staff campaigning during working hours. That staff who are also NYSNA members may choose to play a role in their off hours poses no harm to any legitimate interests of Plaintiffs. In any event, the mere possibility that the staff might engage in improper election conduct, and that such unknown future conduct could in some way be detrimental to the interests of the Plaintiffs, is no grounds for a preliminary injunction prohibiting the termination of the incumbent staff. *See Winter*, 555 U.S. at 22 (mere possibility of irreparable harm not sufficient for interim injunctive relief); *Faiveley*, 559 F.3d at 118 (risk of harm cannot be remote or speculative).

E.     Alleged "Prejudicial Campaigning"

Plaintiffs also fail to show that they risk irreparable harm from the new Board majority allegedly using "NYSNA's resources to congratulate members on voting for them." Complaint ¶ 62.  Plaintiffs cite just one example of this alleged practice, a hearsay account from a newspaper report, quoting a flyer from an unidentified source, which allegedly said "Now— thanks to your votes for the Board—we can build the union back and get some return for our dues."  Byrnes Dec., Ex. L.  Even assuming that the newspaper accurately quotes the flyer and that the flyer was issued with NYSNA's resources—and defendants expressly deny any role with respect to the flyer—the gratitude expressed in the flyer for the members' votes poses no harm, let alone some sort of cognizable harm, to the Plaintiffs.  Plaintiffs try to cast the flyer as "prejudicial campaigning" in the rerun election, but the flyer makes no reference to any rerun election, nor is there a rerun election presently scheduled.  Any harm Plaintiffs might suffer from the flyer is, at best, speculative and remote, and insufficient to trigger the extraordinary remedy of interim injunctive relief.

F.     The Alleged Limitation of the President's Authority

Nor can Plaintiffs show that they will suffer actual and imminent harm, *Faiveley*, 559 F.3d at 118, by the Defendants allegedly curtailing the authority of NYSNA's president under NYSNA's bylaws.  *See* Complaint ¶ 85.  Plaintiffs argue that Defendants' alleged conduct poses irreparable harm to them "by removing the powers of a duly elected officer, diminishing the efficient administration of NYSNA and an important internal check on the power of the Board to exceed its authorities."  Pltfs. Mem. 10.

In fact, there is no evidence that Defendants have removed any of the powers given the president under NYSNA's bylaws.  The president's enumerated powers under NYSNA's bylaws are to chair the meetings of certain NYSNA bodies; preside at all NYSNA

meetings; serve as *ex officio* member of all committees except the nominating committee; and serve as the official representative of NYSNA.  *See supra* at p.9.  Plaintiffs do not allege, and there is no evidence, that NYSNA's Board has prevented the president from chairing or presiding at any meetings, serving on any committees or serving as NYSNA's official representative.

Rather, Plaintiffs' claim rests solely on a November 21, 2011 letter from NYSNA's interim executive director to its president, instructing the president "not to take any action(s) on matters *involving the Board*" and, in particular, informing the president that NYNSA's outside counsel would respond to certain correspondence from the ANA.  *See supra.* at p.9 (emphasis added).  There is nothing in the NYSNA's bylaws that gives the president authority to deal with matters "involving the Board" or to respond to particular correspondence that the Board would prefer handled by outside counsel.

In any event, there is no evidence that instructing the president not to take actions on matters involving the Board and that outside counsel would respond to the ANA has diminished "the efficient administration of NYSNA" or caused the Board to "exceed its authorities."  Ptlfs. Mem. 10.  To the contrary, as set forth *supra* at p.9, the memorandum plaintiffs complain of is fully consistent with Board policy prohibiting individual Board members from taking action on behalf of the Board as a whole.

## II.   PLAINTIFFS FAIL TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

Where a plaintiff seeks interim relief that seeks not to preserve the *status quo* but to alter it, an even more rigorous test applies: plaintiff must make a showing of likelihood of success on the merits that is clear or substantial.  *Dilacio*, 2008 WL 4449361, at *5.  Here, Plaintiffs seek an interim order requiring, among other thing, the re-hiring of already terminated

staff.  *See* Complaint, ¶ 2 of "Prayer For Relief" (seeking order prohibiting Defendants from

"persisting in the pre-election termination of NYSNA senior administrative employees").

Accordingly, Plaintiffs must make a clear or substantial showing of likelihood of success on the

merits.  As discussed below, they fail to do so.

       A.    <u>The Rerun Election</u>

Plaintiffs' fail to demonstrate any likelihood of success on the merits of their claim that

the Board is required by NYSNA's Bylaws to immediately conduct a rerun election.  Plaintiffs'

contend that the Election Committee's recommendation to rerun the election binds the Board.

But there is nothing in the Bylaws to support that contention, and as set forth *supra* at pp. 3-6,

the actions of the prior Board and the colloquy before the Court which plaintiffs selectively cite

to in support of their application confirm that the Election Committee can only make

recommendations, and do not bind the Board.

Plaintiffs' counsel refers in his declaration to *Craig v. Boudrot*, 40 F.Supp.2d 494

(S.D.N.Y. 1999) to support its contention that the Court has jurisdiction to order the rerun

election.  Schwartz Dec. ¶ 10.  But *Craig* does not support plaintiffs' contention because, unlike

this case, the bylaws at issue in *Craig* expressly provided for a rerun election in the event of a tie

vote between two candidates (as had occurred in that case).  *Id.* at 496-98.

       B.    <u>Failure to Pay Dues to NFN</u>

Plaintiffs fail to show likelihood of success on the merits of their LMRA Section

301 claim in Count 1 that Defendants violated the NFN constitution by deciding that NYSNA

would not pay dues to NFN.  *See* Complaint ¶ 68.  First, it is not clear from the record that Count

1 states a claim under LMRA Section 301, which permits suits for breach of a contract between

"labor organizations."  29 U.S.C. §185(a).  The LMRA defines a "labor organization" as an

organization that exists for the purpose, in whole or in part, of "dealing with employers" over

labor disputes or working conditions.  29 U.S.C. §152(5).  NFN's constitution states that NFN is a "national federation" of affiliated "nursing labor organizations" whose purpose is to "strengthen and assist" those affiliates and "establish and implement an effective national labor agenda" for registered nurses.  Byrnes Dec., Ex. G, at 1 (Art. II).  The constitution nowhere indicates that NFN itself deals with employers.

Second, even assuming that NFN is a "labor organization" within the meaning of Section 301 and that its constitution constitutes a contract between NFN and its affiliates, including NYSNA, *see* Complaint ¶45, Plaintiffs still lack standing to sue for breach of the NFN constitution.  Courts have permitted individual union members to sue for breach of a union constitution under Section 301, but only when they are suing for breach of their own union's constitution.  *See, e.g., Shea v. McCarthy*, 953 F.2d 29, 30 (2d Cir. 1992) (Teamster members suing for breach of Teamster constitution)**.**  Here, however, Plaintiffs are members of NYSNA, not of NFN.  *See* Complaint ¶¶ 4, 5.  The members of NFN are its affiliated nursing labor organizations, including NYSNA.  *See* Byrnes Dec., Ex. G, at 3 (Art. V, §1).

If a plaintiff is not a member of the union whose constitution is at issue, the plaintiff only has standing under Section 301 if he or she is either a party to the contract or an intended beneficiary of it.  *Communications Workers of Am. v. CWA Local 3010*, 594 F.Supp.2d 187, 188 (D.P.R. 2009).  Here, Plaintiffs are not party to the NFN constitution nor is there any evidence that they, as individual members of NYSNA, are intended beneficiaries of it.  The NFN constitution is intended to benefit the members of NFN, which are the nursing labor organizations with which NFN is affiliated.

But even assuming Plaintiffs have standing under Section 301 to claim a breach of the NFN Constitution, they fail to show how NYSNA's not paying dues to NFN constitutes a

breach.  As noted, the NFN Constitution nowhere provides that affiliates have an ongoing

obligation to pay dues to NFN; it merely requires that a single fee be paid.  *See* Byrnes Dec., Ex.

G, at 4 (Art. V, §4(B)(4) (requiring organization affiliate to have "Paid a fee as established by the

NEB")).

C.       The Alleged Violation of ANA Bylaws

Plaintiffs also fail to make a clear showing of their likelihood of success on the

LMRA Section 301 claim in Count 2, regarding the alleged violation of the ANA bylaws.  ANA

has charged NYSNA with "dual unionism."  Byrnes Dec., Ex. I.  Dual unionism is a well-

established term in labor relations which refers to conduct meant to undermine one union by

helping a rival union supplant it as bargaining representative.  *See Schalk v. Transport Workers

Union*, 2007 WL 1310171, at *1 (S.D.N.Y. 2007); *Local 1199 v. RWDSU*, 671 F. Supp. 279,

285-86 (S.D.N.Y. 1987); *see also Aircraft Mechanics Fraternal Ass'n v. Transport Workers

Union, Local 514*, 98 F.3d 597, 600 (10th Cir. 1996).  The only allegation that Plaintiffs make to

support their claim of dual unionism claim is that NYSNA "hire[d] the head of the

Massachusetts Chapter of the NNU, a rival of ANA."  Complaint ¶ 73.  But NYSNA bringing on

board an experienced leader from another nurses' organization in no way shows that NYSNA or

any of the Individual Defendants has engaged in dual unionism.  In particular, there is no

evidence that NYSNA or the Individual Defendants intend to, or are trying to, help NNU or its

Massachusetts branch supplant NYSNA as collective bargaining representative for any nurses

that NYSNA currently represents.

D.       The Termination of NYSNA Staff

Next, Plaintiffs make no showing of likely success on the merits of their claim in

Count 3 that Defendants have violated NYSNA bylaws and policies by terminating incumbent

staff.  *See* Complaint ¶ 80.  To begin with, it is unclear how plaintiffs would have standing to

complain about terminations of unelected personnel.  And, standing issues aside, plaintiffs cite

no provision of NYSNA's bylaws, nor do they cite any NYSNA policies, that prevent a newly

elected administration from terminating staff.  Moreover, as noted above, the Supreme Court has

held that it is consistent with federal labor law, and with the goals of union democracy, for newly

elected union officers to select staff whose views are compatible with their own.  *See Finnegan*,

456 U.S. at 441.[7]

> E.    <u>Alleged "Prejudicial Campaigning"</u>

Nor do Plaintiffs show a substantial likelihood of success on their claim in Count

3 that Defendants violated NYSNA's bylaws and policies by allegedly engaging in "prejudicial

campaigning."  Complaint ¶¶ 62, 63, 80.  As noted above, Plaintiffs base this claim on a

newspaper account of a single flyer that allegedly expressed gratitude to the members for their

votes.  Defendants expressly deny any knowledge of such a flyer or any role played by NYSNA

with respect to any such flyer.  In any event, plaintiffs cite no provision of NYSNA's bylaws, nor

any NYNSA policies, that prohibits any such speech.

> F.    <u>The Alleged Limitation of the President's Authority</u>

Finally, Plaintiffs also fail to show substantial likelihood of prevailing on Count 4,

that Defendants have violated NYSNA's bylaws and policies by allegedly limiting the functions

of NYSNA's president.  *See* Complaint ¶ 85.  As noted above, the president's enumerated

powers under the NYSNA Bylaws are to chair the meetings of certain NYSNA bodies; preside at

all NYSNA meetings; serve as *ex officio* member of all committees except the nominating

committee; and serve as the official representative of NYSNA.  Kane Dec., Ex. D, Art. V, §5.

---

[7] Even if Plaintiffs could point to some relevant NYSNA "policy," there is no evidence that
NYSNA intended any such "policy" to be, like its bylaws, part of an enforceable contract with its
members.

Plaintiffs do not allege that NYSNA's Board has prevented the president from doing any of these things. The November 21, 2001 memorandum on which Plaintiffs rely for their claim in Count 4 simply instructs the president that she may not take actions individually on behalf of the Board in general, and in particular with respect to the complaint plaintiffs filed against NYSNA with the ANA. As set forth *supra* at p.9, the memorandum is fully consistent with written Board policy.

### III.   PLAINTIFFS FAIL TO SHOW A BALANCE OF HARDSHIPS TIPPING DECIDEDLY IN THEIR FAVOR

Finally, even if Plaintiffs could show sufficiently serious questions going to the merits to make them fair ground for litigation—and they clearly do not—they fall far short of showing a balance of hardships tipping decidedly in their favor. As already explained, Plaintiffs face no harm, or at best remote and speculative harm, from the alleged conduct by Defendants that they challenge in this action. NYSNA and its membership, however, would face clear hardship were the preliminary injunction to issue. Among other things, were NYSNA's elected leadership enjoined from terminating incumbent staff and from hiring staff that shared the leadership's views, the leadership would be prevented from carrying out the mandate of the voters who put them in office. *See Finnegan*, 456 U.S. at 441.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' application for a TRO and preliminary injunction should be denied.

Dated: New York, New York
       December 9, 2011

                                        Respectfully submitted,

                                        /s/ Bruce S. Levine

                              By    _____
                                        Bruce S. Levine
                                        Peter D. DeChiara
                                        COHEN, WEISS AND SIMON LLP
                                        330 West 42nd Street
                                        New York, NY 10036-6976
                                        212-563-4100

                                        Attorneys for Defendants